CARMAN ET AL. *v.* STATE OF INDIANA.
[No. 26,297.   Filed May 24, 1935.]

*Horace G. Murphy* and *Clarence W. Dearth,* for appellants.

*Philip Lutz, Jr.,* Attorney-General, *Ralph E. Hanna,* Assistant Attorney-General, and *John H. Brubaker,* for appellee.

HUGHES, J.—As stated in the brief of appellant, on June 28, 1929, the appellants were arrested and charged in the Wayne Circuit Court with the crime of automobile banditry. Within a few days thereafter they were arraigned, and upon the several pleas of guilty, were found guilty and sentenced to a term in the Indiana state prison of 25 years. On February 8, 1932, the appellants filed a petition for a writ of error coram nobis, asking that the court annul, vacate, and set aside the judgment in said cause and allow the petitioners to

withdraw their plea of guilty and enter a plea of not guilty. The state filed an answer in general denial with supporting affidavits. The appellants filed motions to strike out the answer in general denial and the supporting affidavits, which were overruled. The appellants then filed a demurrer to the answer and supporting affidavits, and the same was overruled by the court. They then filed a petition asking the court to issue subpoenas to the warden of the state prison at Michigan City to bring the petitioners to the trial in order to testify in their own behalf, and this petition was overruled by the court. A trial was had, the appellants introducing their petition for a writ of error coram nobis, and the state introducing in evidence the supporting or counter affidavits. In rebuttal appellants introduced four counter affidavits in support of their petition for the writ. Judgment was returned against appellants and hence this appeal.

The petition for the writ of error coram nobis consists of many pages, and we will only give the substance of the same. It alleges that on the 28th day of June, 1929, the appellants were charged by affidavit with the crime of automobile banditry; that they were arrested and confined in the Wayne county jail for several days; that they did not have the benefit of legal advice of their own choosing; that the court did not appoint a lawyer to advise them or either of them; that on or about the 3rd day of July, 1929, an attorney representing himself to be for the poor of Wayne county came to the petitioners in the Wayne county jail, and advised them that under the law they were guilty only of burglary, and that the penalty for that crime was imprisonment in the state prison for not less than two years nor more than 14 years; that they relied upon the advice of said attorney and believed that they were pleading to the

charge of burglary and not to automobile banditry; that they entered their plea of guilty on July 5, 1929, and judgment was pronounced and they were committed to prison; that they nor either of them had or possessed an automobile which was located closer than two-thirds of a mile distant from the scene of the burglary with which they had been connected, and that they were not guilty of the crime of automobile banditry and that they could not be found guilty under the facts, as they existed. That the appellants aver that their several pleas of guilty upon which the judgment was pronounced were void and form no basis for a judgment for the reason that it was pronounced by mistake and by misrepresentation on the part of a public official to whom these petitioners and each of them had a right to depend for correct advice. The appellants ask permission to withdraw their pleas of guilty and that they and each of them may have permission to enter a plea of not guilty to the charge, and that they be put upon trial on said charge according to the rules and forms of law.

As heretofore stated, to this petition the state filed an answer in general denial and ten supporting affidavits. We will set out the substance of some of these affidavits.

E. Earl Robins, prosecuting attorney for the Wayne Circuit Court, filed a supporting affidavit, the substance of which is as follows: That the appellants were arrested on June 28, 1929, and that on June 29, 1929, they were duly arraigned on the charge of automobile banditry; that they then and there pleaded not guilty to said charge; that on July 3, 1929, they requested one Jess G. Revelee, deputy sheriff and designated as turnkey, to call an attorney for them, and at their request he called one J. Brandon Griffis, a practicing lawyer in good standing, before the court; that the said Griffis went to the county jail and consulted with said appel-

lants; that later on the same day the appellants appeared in open court with their attorney, Griffis, and asked the court that some leniency be given appellants, and asked permission of the court that said appellants be permitted to plead guilty to burglary in the second degree; that the court refused said request and stated to said attorney in the presence and hearing of said appellants that they could either plead guilty to automobile banditry as charged and be sentenced to the Indiana state prison for 25 years, or stand trial; that after a consultation with the appellants, the appellants, William D. Craven and Charles Smith, requested leave of the court to withdraw their plea of not guilty and enter their plea of guilty to the charge of automobile banditry, and the said Craven and Smith were then sentenced to the Indiana state prison for the term of 25 years; that the said Carman then and there heard the sentence of William Craven and Charles Smith given by the court, but at that time he refused to plead guilty of automobile banditry; that on July 5, 1929, said appellant, Carman, with his attorney, Griffis, appeared in court and withdrew his plea of not guilty and entered a plea of guilty to the charge of automobile banditry and was then and there sentenced to the Indiana state prison for a term of 25 years; that affiant further stated that no attorney was appointed by the court to appear for and on behalf of any of the appellants, nor did any of the appellants petition the court for the appointment of an attorney to defend them on account of their having no funds with which to employ an attorney; that at the time of the arrest of the appellants Robert Carman had in his possession $389.15; William D. Craven, $24.50; and Charles Smith, $45.85, and when they were taken to the state prison upon further search of appellants' person $200 was found in their possession; that the said appellants

drove their automobile to a place approximately four or five blocks from the scene of the crime where they parked; that said automobile was loaded with guns, ammunition, burglary tools, and nitroglycerin, and by means of such automobile they intended to escape after burglarizing the garage of A. J. Miller & Sons. The affiant further states that the appellants had benefit of legal advice of their own choosing; that the said attorney, J. Brandon Griffis, consulted with them during all the time they were in jail and in court, and at all times represented to the court that he was their attorney; that the appellants did not at any time complain or in any manner indicate to the court that they did not understand the charge against them or that they understood the charge to be burglary in the second degree and not automobile banditry.

Arthur Quigley filed a supporting affidavit in which it is stated that during the month of June, 1929, he was a city patrolman for the city of Richmond, Wayne county, Indiana, and that he was acting in such capacity at the time the appellants were arrested and sentenced for the crime of automobile banditry; that on the morning following the arrest he and two others accompanied by the appellant, Charles Smith, went to the place where the appellants had parked the car the night before and which Smith said they intended to make use of to make their escape; that the appellant, Smith, told them that if they were discovered and managed to get through they would scatter to meet at the automobile; that upon searching the automobile he and his companions found a Colt automatic revolver, an automatic shotgun, one-half pint of boiled dynamite mixed with nitroglycerin, and a full line of burglary tools and ammunition for all of the above mentioned guns, also a pair of rubber gloves and a quantity of soap.

Carl C. Boran filed a supporting affidavit in substance the same as that of policeman Quigley.

Henry Long, sheriff of Wayne county during the month of June and July, 1929, also filed a supporting affidavit. He stated that he was present in the Wayne Circuit Court when the appellants were arraigned upon the charge of automobile banditry; that he heard the prosecuting attorney read in full the affidavit against the appellants charging them with automobile banditry and heard them plead not guilty; that he was present on July 3, 1929, when the appellants were all in court and with their attorney, J. Brandon Griffis; that the appellants, Craven and Smith, changed their plea from not guilty to guilty through their attorney, J. Brandon Griffis, and the court pronounced sentence. That on the afternoon of July 4, 1929, the appellant, Robert Carman, stated to the affiant, Long, that he would plead guilty to the charge and that he believed that he would get the maximum sentence of 25 years, and that he would enter his plea and take the rap along with the rest of the boys. On July 5, 1929, Carman appeared in open court with his attorney, J. Brandon Griffis, and through his attorney requested the court to withdraw his plea of not guilty and enter his plea of guilty to the charge of automobile banditry, and he was then and there sentenced. That approximately $365 was taken from the appellants when they were arrested, and later $200 was taken from them when they were taken to Michigan City. Affiant Long further stated in his affidavit that to his knowledge no other attorney visited or communicated with the appellants other than J. Brandon Griffis; that to his knowledge they did not at any time request the court to appoint an attorney because of their being without funds.

Clifford M. Hayworth, who was prosecuting attorney

at the time the appellants were arrested and arraigned, filed a supporting affidavit in substance as follows: That the appellants were charged with automobile banditry and that the affidavit was read to them and each of them and their plea was not guilty. This was on June 29, 1929. That on July 3, 1929, the appellants, William D. Craven and Charles Smith, appeared in open court with their attorney, J. Brandon Griffis, and requested the court for permission to withdraw their plea of not guilty and to substitute therefor their plea of guilty; that such request was granted and that they were sent to the state prison for a period of 25 years; that thereafter the appellant, Robert Carman, with his attorney, J. Brandon Griffis, appeared in court and withdrew his plea of not guilty and entered a plea of guilty and was sentenced by the court; that during all of said time the appellants were in consultation with their attorney, J. Brandon Griffis; that the affiant has reason to believe and does believe that the said J. Brandon Griffis was employed to act for appellants and to advise them and that the said J. Brandon Griffis was by them paid for his services. That on July 3, 1929, at the time appellants, Craven and Smith, appeared in court and changed their plea from not guilty to guilty, the said appellant, Carman, appeared with them, but refused to change his plea; that they were all sitting together consulting with their attorney, J. Brandon Griffis, that before said appellants, Craven and Smith, changed their plea from not guilty to guilty the said attorney requested the court to show the appellants leniency and to permit them to plead guilty to the crime of burglary in the second degree. The court refused said request and stated to their attorney that the appellants were bad men and that they could either plead guilty to the charge of automobile banditry and be sent to the Indiana state prison for 25

years or stand trial. Upon the court's refusal said attorney informed the appellants that if they pleaded guilty to the charge of automobile banditry they would be sentenced for a term of 25 years in the state prison, and thereupon Craven and Smith pleaded guilty and were, sentenced by the court; that on the 5th of July Carman changed his plea to guilty and was sentenced for a period of 25 years.

J. Brandon Griffis filed a supporting affidavit, the substance of which is as follows: That during the months of June and July, 1929, and for a long time prior thereto, and ever since and now is a practicing attorney before the Wayne County Circuit Court and the Supreme Court of Indiana; that he was called by Jess S. Revelee, who was turnkey and deputy sheriff of Wayne county, to come to said jail to interview Craven, Carman and Smith; that when they pleaded guilty and were sentenced by the Wayne Circuit Court for automobile banditry he had been employed by them and had received a fee from them to act as their attorney; that he was with them when they entered their pleas of guilty and were sentenced to prison. He stated further that he never at any time represented himself to any of the appellants that he was the attorney for the poor of Wayne county, nor was he appointed by the judge of the Wayne Circuit Court as attorney for appellants because of their not having sufficient funds for which to employ an attorney; that no other lawyer represented Craven, Carman, and Smith.

Jess S. Revelee, deputy sheriff and turnkey, filed a supporting affidavit, the substance of which is as follows: That during the months of June and July, 1929, he was deputy sheriff of Wayne county and had charge of the prisoners confined in the jail of that county. That he was on duty when appellants were charged with the

crime of automobile banditry and brought to the jail; that they asked for an attorney and that he at that time communicated with J. Brandon Griffis and asked him to come to the jail; that Griffis did come to the jail and talked with the appellants and that he, the affiant, on behalf of Carman, Craven, and Smith, and at their request, paid to the said J. Brandon Griffis, their attorney, the sum of $50.

Some other supporting affidavits were filed, but we think it is not necessary to set out the substance of the same as they are merely corroborative of the ones already mentioned.

The appellants each filed a counter affidavit. Appellant Carman's affidavit is in substance as follows: That at the time of the proceedings in court he was partially deaf and it was difficult for him to hear and understand ordinary conversation; that he did not tell Revelee to pay any money to J. Brandon Griffis; that Griffis was not chosen by the appellants, but that each of them regarded him as a public official and that they did not confer with Griffis while in jail. He further stated that the appellants did not ask clemency from the judge and that they had been advised that they were pleading guilty to burglary; that he believed he was charged with burglary and not with automobile banditry; that the said Griffis and Revelee conspired and confederated to deceive, mislead, and trick appellants to make pleas of guilty to automobile banditry, and that if he had known that the affidavit charged him with automobile banditry he would not have pleaded guilty and that his plea of guilty was due to misrepresentation and trickery by the said Griffis and said Revelee.

Appellant Craven filed an affidavit, the substance of which is as follows: That at the time the appellants were arrested the appellant, Smith, was struck over the

head with clubs and was severely wounded; that at the time of the hearing he, Smith, had great difficulty in hearing what was said by others and that he did not fully understand what was going on; that he did not have any automobile at or near the A. J. Miller & Son garage at the time of the robbery, and neither Carman nor Smith had automobiles at the said time; that Smith did not go with Quigley and his companions to locate the automobile which was said to be placed approximately one-half mile from A. J. Miller & Son garage at the time of the robbery; that he believed that said Griffis and Revelee conspired and confederated together to deceive and mislead the appellants to making pleas of guilty to automobile banditry; that the affiant says that his plea of guilty is due to the fact that he was in total ignorance of the charge of automobile banditry against him and the assurance of his attorney that he was pleading to second degree burglary.

Appellant Smith also filed an affidavit, the substance of which is as follows: That the statements of Quigley and his companion are false in substance and in fact; that he did not go with them to the car mentioned or that he had no knowledge of any automobile mentioned in the statement of Quigley; that he had no knowledge of any articles found in it and that when he attempted to rob the garage of Miller & Sons that they did not have any automobile near said garage for the purpose of escaping therein. Appellant Smith also said in the affidavit that he did not tell Revelee to employ Griffis or any other lawyer; that Revelee told him that the county attorney would take care of the case; that at the time of his arrest he was struck over the head by an officer and required hospital treatment; that when he was in court he had bandages over his ears and had difficulty in hear-

ing, and if he had known he was pleading to automobile banditry he would have pleaded not guilty.

Dr. W. G. Huffman filed counter affidavit in behalf of appellants in substance as follows: That on Friday, June 29, 1929, he was called to the Wayne county jail to treat Charles Smith for scalp lacerations and other wounds requiring stitching of the same; the nature of the wounds requiring bandages covering his right ear.

The appellants present thirteen errors for reversal. The first asserts that the court erred in overruling appellant's petition for an order requiring a subpoena to issue for their return from the state prison to testify at the coram nobis hearing, and to meet the witnesses face to face and to cross-examine the witnesses against them as provided by law. Reasons 2, 3, 4, 5, 6, 7, 8, 9, 10, and 11, are based upon the overruling of appellant's motion to strike out certain affidavits in support of the answer of the general denial filed by the state. The twelfth error assigned is that the court erred in overruling appellant's demurrer to the answer of the State of Indiana in general denial and supporting affidavits, and the thirteenth error assigned is that the court erred in overruling appellant's motion for a new trial.

As to the first assignment, we think no error was committed by the court in overruling the petition for the return of appellants to testify. The writ of error coram nobis is in the nature of a motion for a new trial, and, if granted, has the same effect as a new trial. *Stephenson* v. *State* (1933), 205 Ind. 141, 179 N. E. 633; *Murphy* v. *Daly* (1934), 206 Ind. 179, 188 N. E. 769; *State ex rel.* v. *Killigrew* (1931), 202 Ind. 397, 174 N. E. 808. And as said in the case of *Stephenson* v. *State, supra,*

"In so far as applicable, the sufficiency of the petition will be tested by the rules applicable to mo-

tions for a new trial because of newly discovered evidence."

In passing upon a motion for a new trial it is not necessary that the defendant be present. *Reed* v. *State* (1896), 147 Ind. 41, 46 N. E. 135. It is not part of the trial as contemplated by the statutory and constitutional rule. *Reed* v. *State, supra.* There is no statutory provision requiring the petitioners for a writ of error coram nobis to be present at the hearing on the petition, and no adjudicated case, at least of this court, requires it. The only provision provided by statute for the return of persons confined in state institutions, as we are advised, is found in section 2287, Burns 1926, §9-1623, Burns 1933, and §2280, Baldwin's 1934, which provides that when it is necessary to procure the testimony of a person confined in the state prison and other institution on the trial of any issue upon an indictment or affidavit, or upon any hearing before a grand jury, the court, or judge in vacation, may order a subpoena to be issued, directed to the proper officer commanding him to bring the witness named before the court. This provision is certainly not applicable to a proceeding for a writ of error coram nobis. Such a proceeding is not a trial of the issues. The trial has already been had and the only relief that can be granted is the setting aside of the judgment and the granting of the new trial. *Stephenson* v. *State, supra.* As said in the case of *Sanders* v. *State* (1882), 85 Ind. 318, 326:

"The writ of error *coram nobis* is not intended to authorize any court to review and revise its opinions; but only to enable it to recall some adjudication made while some fact existed which, if before the court, would have prevented the rendition of the judgment, and which, without any fault or negligence of the party, was not presented to the court."

The appellants cite the case of *Harris and May* v.

*State* (1932), 203 Ind. 505, 181 N. E. 33, as conclusive authority on the proposition that the appellants in the instant case were entitled to be present at the hearing of the petition for the writ of error coram nobis. We do not so construe the language of said case and it certainly is not authority for the proposition as contended for. It appears in the foregoing case that the appellants who were young, ignorant, and inexperienced, were serving a life sentence upon a plea of guilty; that they had no counsel and were not advised as to their rights by any one, and the court accepted their pleas of guilty without informing them of the serious consequences thereof, viz., life imprisonment. The court held that the lower court did not sufficiently advise the appellants as to their rights under the Constitution and laws of the state and as to the effect their pleas would have and that they were prevented from asserting and enjoying the right of a legal defense by reason of their ignorance of their rights under the Constitution. It is nowhere held in the opinion, as contended for by the appellants, that they were entitled, under the law, to be present at the hearing of the petition for a writ of error coram nobis and that it would be error to refuse them to be present.

It was said in the case of *Stephenson* v. *State, supra,* that:

"The state may dispute the facts alleged, and the issue of fact thus arising is to be decided by the court without a jury."

In the instant case a verified petition for a writ of error coram nobis was filed by the appellants; the state filed an answer of general denial supported by ten affidavits and the appellants filed a reply in two paragraphs, the first being a general denial and the second consisting of four counter affidavits. Upon the issues as thus formed the court rendered its

judgment. We think this practice was proper. Counter affidavits are proper to be filed in a motion for a new trial. *Hire* v. *State* (1896), 144 Ind. 359, 43 N. E. 312, and, as a coram nobis proceeding is in the nature of a new trial, we see no reason why they are not proper in such a proceeding.

The appellants contend that article 1, section 13, of the Constitution of Indiana gave them the right to be present at the coram nobis hearing. This provision provides:

"In all criminal prosecutions, the accused shall have the right to a public trial by an impartial jury in the county in which the offense shall have been committed; to be heard by himself and counsel; to demand the nature and cause of the accusation against him and to have a copy thereof; to meet the witnesses face to face; and to have compulsory process for obtaining witnesses in his favor."

The appellants are in error in contending that the petition for a writ of error coram nobis is a criminal prosecution and a public trial. It is neither. The trial has already been had, and, as heretofore said, the only relief that could be granted would be the setting aside of the judgment and the granting of a new trial. As said in the case of *Stephenson* v. *State, supra,* the state may dispute the facts alleged in the petition, and the issue of facts thus arising is tried by the court without the intervention of a jury. So it is clearly seen that the constitutional provision as heretofore set out is not applicable to the facts in the instant case.

The appellants contend that the affidavits filed by the state in support of its general denial should have been stricken from the pleadings and excluded in evidence on the grounds that they were hearsay and self-supporting. The motion to strike out and to the admission in evidence was made to each affidavit in its entirety except that of J. Brandon Griffis. Upon an

examination we find that none of the affidavits are based solely on hearsay evidence nor self-serving declarations. It is true that the appellants filed motions to specific parts of the affidavits, but under propositions, points, and authorities in their brief they are not presented and are therefore waived. The appellants cite many authorities upon the admission of hearsay evidence in the trial of a case which we do not question. In the instant case, however, we have no such facts before us. We here have a petition for a writ of error coram nobis which is in the nature of a motion for a new trial and has the same practical effect. The petition for a writ of error coram nobis is heard by the court without a jury, the same as a motion for a new trial is heard. Counter affidavits may be filed and the strict rule of excluding hearsay evidence is not adhered to so closely as in the trial of a cause. 22 Corpus Juris 185. If it be granted that some of the statements in the affidavits were hearsay, this alone would not be reversible error if such statements were not harmful to the appellants and the finding of the court did not depend on the incompetent evidence for its support. *Shira* v. *State* (1918), 187 Ind. 441, 119 N. E. 833. We do not think any of the facts stated in the affidavits which may be said to be hearsay were harmful to the appellants in the instant case and moreover the finding of the court did not depend on any incompetent evidence for its support.

The appellants strenuously insists that the court erred in admitting the affidavit of J. Brandon Griffis in evidence on the theory it violated the rule of confidential communications. We do not agree with appellants as to this contention. In the petition of appellants it is asserted that they were wholly without legal advice or counsel and at no time had the benefit of counsel; that an attorney representing himself to be

the attorney for the poor of Wayne county saw them at the jail and advised them concerning their legal rights. There is no evidence to show, and it is not claimed, that any attorney other than J. Brandon Griffis consulted with the appellants at the jail or any other place. The affidavit of Griffis is in effect a denial of the facts, relative to an attorney, as set out in the petition. He states in the affidavit that he went to the county jail to interview the appellants at the request of Revelee, the deputy sheriff, and he, Revelee, stated in his affidavit that the appellants requested him to send them an attorney. Griffis further testified that appellants employed him and paid him a fee to act for them as their attorney; that he never at any time represented to them that he was attorney for the poor of Wayne county, and he further stated that he was with them as their attorney when they requested the court to be permitted to withdraw their pleas of guilty to the charge of automobile banditry. The affidavit of Griffis did not purport to set out any communication with the appellant other than as set out above and there was no violation of any confidential communications.

Upon an examination of the whole record in this case we can not say that any rights have been denied the appellants. It does not appear that they were misled in any way, but on the contrary it appears that they were fully informed as to the charge and the consequences of a plea of guilty. They were in court with their attorney; they plead not guilty in the first instance and then requested the court to permit them to enter a plea of guilty to second degree burglary; the court announced in their presence and hearing, and in the presence and hearing of their counsel that it would not permit such a plea, and if appellants did not plead guilty to the charge of automobile banditry they would have to stand trial;

that thereupon appellants plead guilty to automobile banditry and were sentenced to prison. It is hardly conceivable that they did not fully understand the charge against them and the consequences of a plea of guilty.

We think no reversible error was committed in the trial of the case and the evidence is sufficient to sustain the judgment.

Judgment affirmed.